IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SARAH J.,[1]

        Plaintiff,

  v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

No. 6:24-cv-929-HL

OPINION & ORDER

HALLMAN, Magistrate Judge:

    Plaintiff Sarah J. brings this action under the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"). The Commissioner denied Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. 42 U.S.C. § 401 *et seq*. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405. For the following reasons, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION & ORDER

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter ... a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

**BACKGROUND**

**I.    Plaintiff's Application**

Plaintiff alleges disability based on the combined effects of her depression, anxiety, ADHD, and PTSD. Tr. 287.[2] At the time of Plaintiff's amended alleged onset date, October 31,

---

[2] Citations to "Tr." are to the Administrative Record, ECF No. 7.

2019, she was 36 years old. Tr. 147-57. Plaintiff applied for benefits in September, 2021, alleging disability beginning January 31, 2016. Tr. 147-57. The agency denied the claims both initially and upon reconsideration. Tr. 165-81. Plaintiff subsequently requested a hearing, which was held on October 5, 2023 before Administrative Law Judge (ALJ) Nathan Mellman. Tr. 16-57. Plaintiff appeared and testified at the hearing, represented by counsel. Tr. 16-57. At the hearing, she amended her alleged onset date to October 31, 2019. *Id*. On November 28, 2023, the ALJ issued a decision denying Plaintiff's claims for benefits. Tr. 118-44. Plaintiff requested Appeals Council review, which was denied on April 10, 2024. Tr. 1-6. Plaintiff then sought review before this Court.[3]

## II.   Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

---

[3] The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636. ECF 1.

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

### III.    The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 31, 2019, the amended alleged onset date. Tr. 123. At step two, the ALJ found Plaintiff had the following severe, medically determinable impairments: attention deficit hyperactivity disorder (ADHD); depression; bipolar disorder; posttraumatic stress disorder (PTSD); and obesity. Tr. 124. At step three, the ALJ found no impairment met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 126. The ALJ assessed Plaintiff's residual functional capacity ("RFC"), as follows:

> to perform less than the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c). She can occasionally lift and carry 50 pounds and frequently lift and carry 25 pounds. She can sit, stand, and walk for six hours in a typical eight-hour workday. She can push and pull as much as she can lift and carry. She can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. She can frequently stoop, kneel, crouch, and crawl. She can perform unskilled tasks but not at a production rate pace such as jobs with an hourly quota or assembly line work. She can occasionally interact with coworkers but cannot perform joint tasks with coworkers. She can occasionally interact with members of the general public. She can make simple work-related decisions.

Tr. 128.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. Tr. 136. At step five the ALJ determined that considering Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Plaintiff can perform, such as floor waxer, hand packager, or kitchen helper. Tr. 138. The ALJ therefore found Plaintiff not disabled. Tr. 138.

## DISCUSSION

Plaintiff argues the ALJ committed three harmful errors. She contends the ALJ erred by (1) discounting her subjective symptom testimony without a clear and convincing reason for

doing so, (2) rejecting lay witness testimony without a germane reason, and (3) failing to fully develop the record. For the reasons that follow, the Court finds the ALJ did not err, and affirms.

## I. Symptom Testimony

Plaintiff first asserts that the ALJ improperly rejected her subjective symptom testimony. Pl.'s Opening Br. at 3-14. This Court disagrees.

### A. Legal Standards

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony

regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

### B.  Plaintiff's Testimony

At the administrative hearing, Plaintiff testified that that she last worked in 2021 for about four months doing tech support for a third-party call center. Tr. 22-23. She found the job overwhelming and left when she lost her housing. Tr. 23, 25. At the time, her " anxiety was really high key and it was only getting worse." Tr. 26.  She "was having like anxiety attacks all the time," and had significant issues interacting with others, especially over the phone. Tr. 26.

Plaintiff further testified that she has had more than fifty work attempts and has a lot of employment-related triggers. Tr. 25-26. She was fired from a photography job because she was emotionally unstable and failed to show up for scheduled shifts. Tr. 31. She was fired from other jobs because she was unable to keep up with sales quotas or time limits. Tr. 44. She had also been fired from jobs for arriving late too many times. Tr. 44. Her ability to be in public and interact with people had gone severely downhill. Tr. 33-34.

In written testimony, she shared that she experiences anxiety and pain; she is "in the healing process," "deep in PTSD because [she has] been homeless, moving around and not . . . able to feel safe very long-for years." Tr. 350. Now that she has stable housing, she "feel[s] like that threat of being homeless at any moment is gone" and "can recover and process all of the trauma [she has] been experiencing," which she does by "stay[ing] in [her] own head," and isolating. Tr. 350. She "cannot multitask which causes [her] to forget [and] panic, [and] it greatly

[a]ffects [her] ability to manage time." Tr. 342. She experiences "environmental triggers due to . . . high sensitivity to smells, sights, sounds [and] all senses being amplified, which lends to [her] social anxiety as well." Tr. 342. She described social and cognitive difficulties that have negatively impacted past work attempts. Tr. 342, 349. She experiences anxiety about leaving her bedroom, even to use the bathroom. Tr. 343, 350. In a typical day, she watches videos and listens to music and "tr[ies] not to feel." Tr. 343. She sleeps ten to fourteen hours per day to "shut off [her] thoughts." Tr. 343. She sometimes wears the same clothing for days at a time. Tr. 343.

She avoids bathing. Tr. 343, 350. She frequently forgets to take her medications and finds it overwhelming to manage them. Tr. 344, 350. She makes simple meals that take only ten minutes to prepare. Tr. 344. She does very minimal cleaning at home and sometimes needs reminders to do it at all. Tr. 344.

Plaintiff reported that she leaves the house weekly for counseling appointments. Tr. 345, 346. She needs someone to accompany her "[a]bout half the time," and she often needs her father to drive her to appointments due to anxiety. Tr. 345, 350. Her father usually does her shopping as well. Tr. 345. She struggles to maintain focus to read. Tr. 346. She does not spend time with others—not even family members in the home. Tr. 346. She avoids being around other people. Tr. 347. Her impairments impact her ability to talk, see (due to light sensitivity), remember things, complete tasks, concentrate, understand, follow instructions, and get along with others. Tr. 347. She can pay attention for only five minutes at a time. Tr. 347. She struggles to follow both written and spoken instructions. Tr. 347. She cannot handle stress or changes in routine. Tr. 348.

The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements

concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 129. Specifically, the ALJ discussed the objective medical evidence and Plaintiff's improvement with treatment when discounting her subjective symptom testimony. Tr. 127-30. This Court addresses each rationale in turn.

   **C.**  **Objective Medical Evidence**

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle*, 533 F.3d at 1161; *see also Smartt*, 53 F.4th at 498 ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."). While an ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain," *Rollins*, 261 F.3d at 857, they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); see also 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). In sum, "an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborat[ing]' every allegation within the subjective testimony." *Smartt*, 53 F.4th at 498 (quoting *Burch*, 400 F.3rd at 681).

  The ALJ reasonably discounted Plaintiff's allegations of limitations stemming from her mental health issues as inconsistent with objective medical evidence. Conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at

9 – OPINION & ORDER

498; 20 C.F.R. § 416.929(c)(2). At the hearing, Plaintiff testified to significant anxiety and ADHD-related symptoms that made it difficult for her to perform at work and interact with others. *See* Tr. 26-30, 344-50. In contrast to Plaintiff's allegations that for example, her short-term memory was terrible (Tr. 351), the ALJ noted that medical providers repeatedly found her memory normal or intact. Tr. 127 (citing Tr. 502, 510, 804, 1080). Plaintiff also alleged that she avoided people and had difficulty communicating (Tr. 347), but the ALJ highlighted records showing she was cooperative and pleasant, had good eye contact; desired being around people more, and could maintain conversation. Tr. 127 (citing Tr. 510, 645, 647, 832, 801, 884). Plaintiff further testified that she moved the Texas to help one friend, and moved in with another while there, further conflicting with her testimony about difficulty interacting with others. Tr. 130. Although Plaintiff claimed she wore the same clothes for days at a time (Tr. 343), the ALJ noted her providers found her well-groomed, clean, neat, and appropriately dressed. Tr. 128 (citing Tr. 502, 510, 1100). The ALJ reasonably concluded that these records all conflicted with or showed a lack of support for Plaintiff's allegations of more significant limitations. Tr. 127. This was substantial evidence supporting the ALJ's decision to discount Plaintiff's testimony about the severity of her mental health symptoms.

      The ALJ also reasonably discounted Plaintiff's alleged mental health limitations because the record reflected significant gaps in her treatment, which Plaintiff did not adequately explain. Conservative treatment can also be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not as all-disabling as the claimant reported. *Tommasetti*, 533 F.3d at 1039. The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms."

20 C.F.R. § 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle*, 533 F.3d at 1162; SSR 16-3p, 2017 WL 5180304, at *9. Here, there are no treatment records from October 2019 to April 2021. Tr. 492, 655. At the hearing, the ALJ asked why Plaintiff did not obtain insurance or medical care during this time frame. Tr. 37-38. Plaintiff responded that she did not pursue medical help because she "did not usually last somewhere more than three months," but did not otherwise testify about an inability to access medical care. Tr. 38. The ALJ reasonably concluded that the treatment gap from October 2019 to April 2021 suggested Plaintiff's symptoms were not as severe as she alleged during this time. Tr. 130; *see Burch*, 400 F.3d at 681. This was another clear and convincing reason the ALJ relied upon to discount Plaintiff's testimony.

      Plaintiff urges the Court to adopt a different interpretation of the record, but does not undermine the substantial evidence supporting the ALJ's decision. Plaintiff challenges the ALJ's conclusions that her treatment gaps, and some improvement with treatment undermine her testimony. Pl. Br at 10-13. Specifically, Plaintiff argues the ALJ "disregarded the numerous supportive findings" of her mental health limitations in the record, and failed to account for her explanations for gaps in her treatment. *Id*. Plaintiff also emphasizes that these medical records fit with the more disabling medical opinions in the record. *Id.* at 8-9. But the ALJ reasonably considered the longitudinal record, Plaintiff's failure to establish care while in Texas, and discounted Plaintiff's alleged limitations. Tr. 127-30. Plaintiff's arguments about the severity of her mental health limitations are an effort to have this Court re-weigh the evidence, which is beyond the scope of review. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ."). Even when there are two

11 – OPINION & ORDER

reasonable interpretations—plaintiff's and the ALJ's—the ALJ's interpretation must prevail. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."). Against that backdrop, even though Plaintiff clearly interprets the evidence differently, she has not (and cannot) establish error by simply advancing a different interpretation of the medical evidence. The ALJ's conclusion "showed his work," and was supported by substantial evidence, so the Court will not disturb it on this basis.

### D.   Improvement with Treatment

The ALJ also rejected Plaintiff's testimony concerning her mental health limitations in part because the evidence demonstrated improvement with treatment. Tr. 130. An ALJ may also reject a claimant's symptom testimony if that testimony is contradicted by evidence of improvement in the medical record. *Carmickle*, 533 F.3d at 1161. If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Ninth Circuit has held that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).

The medical records the ALJ cited showed medication helped Plaintiff's mental health symptoms, and this was a clear and convincing reason to discount her symptom testimony. For example, in August 2021, two months before the alleged onset date, Plaintiff reported a minor improvement in her ADHD symptoms with Ritalin, including improved memory. Tr. 131, 860. She also reported a significant improvement in PTSD symptoms, including no nightmares, no startle response, and a significant improvement in intrusive memories. Tr. 130, 860. By September 2021, Plaintiff had more organized thinking and communicating patterns, fewer

racing thoughts, and improved executive functioning, as well as a positive future orientation. Tr. 130, 835. Her ADHD symptoms had "greatly improved with medication." Tr. 130, 835.. The ALJ appropriately considered the evidence when he determined that Plaintiff's symptoms were manageable with appropriate medications, and this was another clear and convincing basis to discount Plaintiff's symptom testimony.

Plaintiff argues the ALJ erred by failing to acknowledge "the overall waxing and waning severity of Plaintiff's mental illness" when concluding her testimony was undermined by evidence of improvement with treatment. Pl. Br. at 12 (citing *Garrison*, 759 F.3d at 1017-18). But, as noted above, this asks the Court to re-weigh the evidence, which is beyond the scope of review. *Ahearn*, 988 F.3d at 1115. And substantial evidence supports the ALJ's conclusion (even if there is other evidence that might support Plaintiff's version of events). For example, Plaintiff points to a record indicating that her anxiety and PTSD symptoms persisted despite medication. Pl. Br. at 12. But the same medical record also shows Plaintiff's symptoms had improved over the last year. Tr. 1507. Other medical records Plaintiff cites show that even when facing stressors, she was able "to do positive comparison looking back to when she started counseling, seeing how far she has come and what she has to do to continue moving forward." Tr. 1737. Although Plaintiff points to parts of the record that suggest her symptoms could worsen based on situational stressors, the ALJ's overall conclusion that the longitudinal record showed a trajectory of improvement was a reasonable one, and a clear and convincing basis to rely upon to discount her testimony.

## II.    Lay Witness Testimony

Plaintiff next asserts that the ALJ improperly rejected lay witness testimony—a report from Plaintiff's father—without providing germane reasons for doing so. Pl. Br. at 16-17. This

Court disagrees.

### A.     Legal standards

Lay testimony as to a claimant's symptoms is "competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine*, 574 F.3d at 694.[4] But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id.* Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported

---

[4] Citing the revised regulations for medical source opinions and the Ninth Circuit's unpublished opinion in *Fryer v. Kijakazi*, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022), the Commissioner argues that the ALJ is no longer required to provide "germane reasons" for discounting lay witness testimony. Def. Br. 9-10. The Court notes that this issue is currently under consideration in the Ninth Circuit. *See Hudnall v. Dudek*, 130 F.4th 668, 671 (9th Cir. March 7, 2025) (vacated and withdrawn, 2025 WL 1024393, at *1 (9th Cir. Apr. 7, 2025). Unless and until the Ninth Circuit provides contrary, binding guidance on the interpretation of the 2017 regulations, the Court will continue to require ALJs to state a germane reason for disregarding lay witness testimony. *Valentine*, 574 F.3d at 694.

reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id.* at 1117, 1122.

### B. Analysis

The ALJ provided a germane reason to conclude that Plaintiff's father's statement was only partially persuasive because his allegation that Plaintiff suffered from panic attacks was inconsistent with the record. Tr. 135. The ALJ cited several inconsistencies between Plaintiff's father's statement and mental status examinations showing that Plaintiff dressed appropriately, was cooperative, and had adequate memory, judgment, and insight. Tr. 135, 502, 510, 884, 1100. Plaintiff's father's testimony also largely mirrored her own. *Compare* Tr. 22-34 (Plaintiff's testimony) *with* Tr. 331-37 (Plaintiff's father's testimony). The ALJ provided clear and convincing reasons to discount Plaintiff's testimony—as addressed above— and the substantial evidence supporting the ALJ's decision to discount those allegations applies to her father's testimony with equal force. *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009). Therefore the ALJ did not err in his analysis of the lay testimony.

### III. Duty to Develop the Record

Finally, Plaintiff argues that the ALJ erred by not seeking a further consultative examination to determine the extent of Plaintiff's mental impairments. Pl.'s Br. at 14-15.

Although an ALJ "has an independent duty to fully and fairly develop the record," *Smolen*, 80 F.3d at 1288, this duty is only triggered by ambiguous evidence or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Here, there was no ambiguous evidence in the record that triggered the ALJ's duty to further develop it. Plaintiff points to no evidence that was ambiguous or difficult to interpret and the record was sufficient for the ALJ to evaluate

Plaintiff's application. *See* Pl. Br. at 14-16. On this record, the ALJ did not have a duty to seek a further consultative examination. *See Smolen*, 80 F.3d at 1288 (ALJ has no duty to develop the record if no medical evidence indicates that such an impairment might exist); *Mayes*, 276 F.3d at 459-60 (ALJ "had no duty to develop the record by diagnosing [claimant's] herniated discs" where claimant "did not provide the ALJ with any medical evidence indicating that she had herniated discs until after the ALJ hearing"). Although Plaintiff argues the ALJ improperly based his decision on lack of evidence, the ALJ's decision reasonably relied on sufficient medical evidence from State agency psychological consultants (whose opinions Plaintiff does not challenge) when concluding Plaintiff was not disabled. Pl. Br. at 15, Tr. 134-36. Accordingly, the ALJ did not err by failing further to develop the record with a retrospective consultative examination or a medical expert opinion.

## CONCLUSION

For the reasons given above, the Commissioner's decision is AFFIRMED.

DATED this __6th__ day of May, 2025.

_____
ANDREW HALLMAN
United States Magistrate Judge